**MUSICK, PEELER & GARRETT LLP**
624 South Grand Avenue, Suite 2000
Los Angeles, California 90017-3383
Telephone (213) 629-7600
Facsimile (213) 624-1376

David A. Tartaglio (State Bar No. 117232)
 d.tartaglio@musickpeeler.com
Chad A. Westfall (State Bar No. 208968)
 c.westfall@musickpeeler.com

Attorneys for Plaintiff
ADMIRAL INSURANCE COMPANY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> THE SIGMA DELTA CHAPTER OF THE FRATERNITY OF PHI GAMMA DELTA, DYLAN BARTOLO HERNANDEZ by and through his successor in interest, DYLAN HERNANDEZ JR., BARTOLO HERNANDEZ JR., SYLVIE ANNETTE HERNANDEZ, JULIA HERNANDEZ, and KAYLA HERNANDEZ, <br><br> Defendants. | Case No. '22CV1196 BEN DDL <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT** |

COMES NOW Plaintiff ADMIRAL INSURANCE COMPANY ("ADMIRAL") and alleges as follows:

## NATURE OF THE ACTION

1.  This is an insurance coverage dispute. Plaintiff seeks a declaration that it has no duty to defend or indemnify Defendant the Sigma Delta Chapter Of The Fraternity Of Phi Gamma Delta ("SD CHAPTER") with respect to the lawsuit captioned, *Dylan Hernandez, et al. v. The Fraternity of Phi Gamma Delta, Inc., et*

1  *al.*, San Diego County Superior Court Case No. 37-2020-00043483-CU-PO-CTL
2  (the "HERNANDEZ ACTION"). Plaintiff also seeks reimbursement of the amounts
3  it paid to defend the SD CHAPTER against the HERNANDEZ ACTION.

4  **THE PARTIES**

5  2. Plaintiff ADMIRAL is a Delaware corporation with its principal place
6  of business in Scottsdale, Arizona. Plaintiff ADMIRAL is authorized to transact
7  business and is doing business in the State of California. Plaintiff is informed and
8  believes and on that basis alleges that Defendant the SD CHAPTER is an
9  unincorporated association under California law and is located in San Diego
10 California.

11  3. Defendants DYLAN BARTOLO HERNANDEZ, by and through his
12 successor in interest BARTOLO HERNANDEZ JR., BARTOLO HERNANDEZ
13 JR., SYLVIE ANNETTE HERNANDEZ, JULIA HERNANDEZ, and KAYLA
14 HERNANDEZ JUNIOR are, and all at relevant times herein were, residents of the
15 State of California. These Defendants are referred to collectively herein as "The
16 HERNANDEZ Claimants" and they are the plaintiffs in the HERNANDEZ
17 ACTION. The HERNANDEZ Claimants are joined in this action as Defendants
18 because of their interest in the insurance coverage issues presented and so that they
19 will be bound by any final adjudication resulting from this action.

20  **JURISDICTION, VENUE AND DIVISIONAL ASSIGNMENT**

21  4. This Court has jurisdiction over this action under 28 U.S.C. § 1332
22 because it is a civil action between citizens of different states and the matter in
23 controversy exceeds the sum of $75,000.

24  5. Venue is proper in this Court under 28 U.S.C. § 1391 (b) because the
25 Southern District includes San Diego County, where the HERNANDEZ ACTION
26 against Defendants for which Defendants seek insurance coverage was filed and
27 where a substantial part of the events or omissions which give rise to the claim
28 occurred.

MUSICK, PEELER
& GARRETT LLP

2005349.1

2

COMPLAINT FOR DECLARATORY JUDGMENT

## THE HERNANDEZ ACTION

6. On November 25, 2020, the HERNANDEZ ACTION was filed in San Diego Superior Court against Defendants. The HERNANDEZ ACTION is a wrongful death lawsuit filed by the surviving parents and siblings of Dylan Hernandez.

7. The HERNANDEZ ACTION Complaint alleges that Dylan was a pledge of the SD CHAPTER fraternity and was called to the fraternity house on November 6, 2019 at 5:00 p.m. for the "Big Brother, Little Brother Night" event, which the Complaint alleges is known to be one of the three deadliest nights among fraternity and sorority events. The HERNANDEZ ACTION Complaint alleges the pledges were initially hazed, berated and embarrassed, forced to drink large quantities of alcohol, and play drinking games; were then blindfolded, taken upstairs, screamed at, threatened and hit; that the pledges where taken back downstairs to meet their Big Brothers; and were screamed at, demeaned and beaten with paddles and hands, and forced to consume shots of vodka and rum to the point of intoxication and forced to consume more alcohol even after they had gotten sick.

8. The HERNANDEZ ACTION plaintiffs allege that, by 10 p.m., Dylan was visibly intoxicated, his speech was slurred, he could not walk on his own, had stumbled and fallen several times and had become ill; that despite his condition, the fraternity members forced Dylan to keep drinking, some of which was recorded on video; that fraternity members failed to call 911 or stay with him until his symptoms were resolved and did not seek any medical attention for Dylan; that Dylan's Big Brother BASS texted Dylan's girlfriend, using Dylan's phone, to meet him outside Dylan's dormitory to get Dylan into his dorm room; that after Dylan was left alone in his top bunk, Dylan fell off his bunkbed, six feet to the floor, and suffered a skull fracture; that Dylan was found non-responsive on November 7, 2019; that 911 was called and Dylan was taken to the hospital and put on life support; and that Dylan died on November 8, 2019.

1    9.    The HERNANDEZ ACTION plaintiffs allege the following causes of action against the Defendants: (i) survival/ wrongful death: negligence; (ii) survival/wrongful death: negligence/negligent supervision, hiring, training and retention; and (iii) premises liability. The HERNANDEZ ACTION plaintiffs allege Defendants are responsible for Dylan's wrongful death for hazing Dylan and forcing him to consume large and unsafe amounts of alcohol, by failing to abide by state laws regarding providing alcohol to minors, not following SDSU's policies in providing an environment safe from hazing, and not providing assistance to Dylan. With respect to the premises liability cause of action, the HERNANDEZ ACTION plaintiffs allege that fraternity members allegedly created a nuisance because of the dangerous conditions at the PGD house, including hazing and illegal activities, including causing or contributing to the intoxication of students, furnishing of alcohol to pledges under the drinking age and who are under the influence in violation of state law, and the failure to follow and enforce the Phi Gamma Delta National's fraternity's Alcohol Policy or Risk Management policies.

10.   The HERNANDEZ ACTION Complaint seeks compensatory damages for Dylan's wrongful death, and the survivors' damages for loss of companionship, loss of future financial support, funeral and burial expenses, and punitive damages.

## THE POLICY

11.   ADMIRAL issued a commercial general liability insurance policy to Phi Gamma Delta, Inc. ("PGD") bearing number CA000017478-07 for the period March 1, 2019 through March 1, 2020 (the "POLICY") subject to limits of $1 million per occurrence and a $250,000 Self-Insured Retention payable by each insured. PGD is the First Named Insured under the POLICY. A copy of the POLICY is attached to this complaint as **Exhibit A**.

/ / /

/ / /

/ / /

12. By endorsement, Section I, Who Is An Insured, of the POLICY was amended as follows:

> SECTION I, WHO IS AN INSURED is amended to include each of the following as an insured but only while in [sic] in compliance with the "Risk Management Policies" of the First Named Insured, acting in their authorized capacity and within the scope of their duties:
>
> 1. "Undergraduate Chapters and Colonies"
>
> 2. "Undergraduate Members"
>
> . . .
>
> Admiral will consult with the National Board of Directors of the First Named Insured to determine if there is compliance with the "Risk Management Policies" of the Named Insured. However, the ultimate decision of compliance with the "Risk Management Policies" and the resulting impact on coverage and any Self-Insured Retention under this policy is the sole responsibility and direction of Admiral and will apply separately to each "insured."
>
> "Undergraduate Chapters and Colonies" mean chapters or colonies recognized as in good standing by the Board of Directors of the First Named Insured.
>
> "Undergraduate members" means the Undergraduate Officers, Undergraduate Directors, Undergraduate Members, Undergraduate Associate Members that affiliated with the entities listed in (1) above.
>
> . . .
>
> "Risk Management Policies" are those written rules, regulations, or policies formally adopted and distributed from time to time by the National Board of Directors of the First Named Insured.

13. The Insuring Agreement of the POLICY provides:

> **1.  Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply . . . .
>
> **b.** This insurance applies to "bodily injury" . . . only if:
>
> **(1)** The "bodily injury" . . . is caused by an "occurrence" that takes place in the "coverage territory";

> **(2)** The "bodily injury" . . . occurs during the policy period; . . .

14. The POLICY contains the following definitions:

> **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. . . .
>
> **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

15. The POLICY contains the following exclusion:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **a.** Expected Or Intended Injury
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

16. The POLICY contains a Fraternity Alcohol Exclusion which states:

> This insurance does not apply to "bodily injury" . . . arising out of, resulting from, or in connection with a violation of the First Named Insured's "Alcohol Policy" including but not limited to:
>
> 1. Causing or contributing to the intoxication of any person;
>
> 2. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol;
>
> 3. Failing to adhere to any statue [sic], ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;
>
> 4. The failure to follow, implement, educate and/or enforce the "Alcohol Policy" and/or the "Risk Management Policies" of the First Named Insured;
>
> 5. The negligent employment, investigation, hiring, supervision, training, or retention of any person; or
>
> 6. The failure to render or secure medical treatment or care necessitated by a violation of "Alcohol Policy".
>
> This exclusion applies only to insureds who "participate" in violation of the "Alcohol Policy".
>
> For the purposes of this endorsement, the following definitions apply:
>
> "**Alcohol Policy**" means the written guidelines, policies, bylaws or processes regarding the use and service of alcohol established by the First Named Insured.
>
> "**Participate**" means to take part in the excluded activity, whether as the direct perpetrator or someone who is supervising, directing or observing such excluded

activity.

"**Risk Management Policies**" are those written rules, regulations, or policies formally adopted by the National Board of Directors of the First Named Insured and distributed by the First Named Insured.

    17.    The POLICY contains a Hazing Exclusion which states:

It is agreed this insurance does not apply to "bodily injury" . . . arising out of "Hazing" committed by any insured.

1. The failure to suppress or prevent "Hazing" by you, any insured, or any person.

2. The failure to provide any environment safe from "Hazing", including but not limited to the failure to provide adequate security or failure to warn of the dangers of the environment which could contribute to "hazing".

3. The failure to follow, implement, educate and/or enforce the "Risk Management Policies" of the First Named Insured. . . .

5. The failure to render or secure medical treatment or care necessitated by "Hazing".

This exclusion applies only to those insured(s) who "participate" in the act of "Hazing".

For the purposes of this endorsement, the following definitions shall apply:

"**Hazing**" means any action taken or situation created, intentionally, whether on or off fraternity premises, to produce mental or physical discomfort, embarrassment, harassment, or ridicule. Such activities may include but are not limited to the following: use of alcohol; paddling in any form; creation of excessive fatigue; physical and psychological shocks, quests, treasure hunts, scavenger hunts, road trips or any other such activities carried on outside or inside of the confines of a chapter house; wearing of public apparel which is conspicuous and not normally in good taste; engaging in public stunts and buffoonery; morally degrading or humiliating games and activities; and any other activities which are not consistent with academic achievement, fraternal law, ritual or policy or the regulations and policies of the First Named Insured, educational institution or applicable state law."

"**Participate**" means to take part in an excluded activity, whether as the direct perpetrator or someone who is supervising, directing or observing the act of "Hazing".

"**Risk Management Policies**" are those written rules, regulations, or policies formally adopted by the National Board of Di- rectors of the First Named and distributed by the First Named Insured.

/ / /

/ / /

18. The POLICY contains an Assault and/or Battery exclusion, which provides:

> **ASSAULT AND/OR BATTERY EXCLUSION**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
>
> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, resulting from, or in connection with:
>
> 1. The failure to suppress or prevent "assault" or "battery" by you, any insured, or any person;
>
> 2. The failure to provide an environment safe from "assault" or "battery", including but not limited to the failure to provide adequate security or failure to warn of the dangers of the environment which could contribute to "assault" or "battery";
>
> 3. The failure to follow, implement, educate and/or enforce the "Risk Management Policies" of the First Named Insured.
>
> 4. The negligent employment, investigation, hiring, supervision, training, or retention of any person;
>
> 5. The use of any force to protect persons or property whether or not the "bodily injury", "property damage" or "personal and advertising injury" was intended from the standpoint of the insured or committed by or at the direction of any insured;
>
> 6. The failure to render or secure medical treatment or care necessitated by an "assault" or "battery".
>
> This exclusion applies only to insureds who "participate" in the "assault" or "battery".
>
> For the purposes of this endorsement, the following definitions apply:
>
> "Assault" means the apprehension of harmful or offensive contact between or among two or more persons by threat through words or deed.
>
> "Battery" means the harmful or offensive contact between or among two or more persons.
>
> "Participate" means to take part in an excluded activity, whether as the direct perpetrator or someone who is supervising, directing or observing such excluded activity.
>
> "Risk Management Policies" are those written rules, regulations, or policies formally adopted by the National Board of Di- rectors of the First Named Insured and distributed by the First Named Insured.

# THE POLICY DOES NOT COVER THE SD CHAPTER'S ALLEGED LIABILITY IN THE HERNANDEZ ACTION

19. Subject to other terms and conditions, the POLICY covers an insured's liability for damages for "bodily injury" that takes place during the policy period and was caused by an "occurrence" as defined and ADMIRAL agreed to defend suits seeking such damages. However, even assuming those requirements are met, the SD CHAPTER's liability in the HERNANDEZ ACTION would not be covered.

**The SD Chapter Is Not An Insured With Respect To The Hernandez Action**

20. Under the POLICY's Who Is An Insured-Amendatory Endorsement quoted above, "Undergraduate Chapters and Colonies" may be an insured, but only while acting in compliance with the PGD's "Risk Management Policies", in their authorized capacity and within the scope of their duties. Here, the Hernandez Complaint alleges that Dylan's death arises from hazing, which included forcing Dylan, a minor, to consume copious amounts of alcohol until he was experiencing symptoms of blood alcohol poisoning. The Complaint alleges that the SD CHAPTER was not acting in compliance with PGD's Risk Management Guidelines, which prohibit hazing and provision of alcohol to minors. As the SD CHAPTER's potential liability is for hazing in violation of PGD's Risk Management Guidelines, it was not acting within the scope of its duties for PGD. Accordingly, the SD CHAPTER does not qualify an Insured under the POLICY for the HERNANDEZ ACTION.

**Coverage Is Precluded For the SD CHAPTER By Policy Exclusions**

21. The POLICY's Fraternity Alcohol Exclusion applies to any insured that "participates" in a violation of PGD's "Alcohol Policy" and precludes coverage for bodily injury arising out of, resulting from, or in connection with a violation of the PGD's "Alcohol Policy" including among other things causing or contributing to the intoxication of any person, the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol, failing to adhere to

any statute, ordinance or regulation relating to the distribution or use of alcoholic beverages, the failure to follow, implement, educate and/or enforce PGD's "Alcohol Policy" and/or the "Risk Management Policies" or the failure to render or secure medical treatment or care necessitated by a violation of "Alcohol Policy".

22.     The Complaint alleges Defendants held the "Big Brother, Little Brother Night" during which Defendants caused Dylan to become intoxicated, furnished alcoholic beverages to Dylan, a minor, and when he was visibly intoxicated, failed to adhere to California statutes regarding distribution of alcohol to minors, failed to follow, implement, educate and/or enforce the "Alcohol Policy" or the Risk Management Guidelines of PGD, failed to supervise Dylan to protect him against alcohol intoxication, and/or failed to render or secure medical treatment for Dylan after he was suffering from severe alcohol poisoning and incapacitated. Accordingly, the Alcohol Exclusion applies to preclude coverage for the SD CHAPTER.

23.     The POLICY's Hazing Exclusion applies to any insured that "participates" in "Hazing" and precludes coverage for bodily injury arising out of "Hazing" committed by any insured, the failure to suppress or prevent "Hazing" by any insured or any person, the failure to provide an environment safe from "Hazing", the failure to follow, implement, educate and/or enforce PGD's "Risk Management Policies" of the First Named Insured and the failure to render or secure medical treatment or care necessitated by "Hazing".

24.     Each of these situations is alleged in the HERNANDEZ ACTION Complaint. Therefore, the Hazing Exclusion applies to bar coverage for SD CHAPTER.

25.     The POLICY's Assault and/or Battery exclusion applies to any insured that "participates" in an "assault" or "battery precludes coverage for bodily injury arising out of, resulting from, or in connection with the failure to suppress or prevent "assault" or "battery" by any insured or any person, the failure to provide an

environment safe from "assault" or "battery", the failure to follow, implement, educate and/or enforce PGD's "Risk Management Policies", the negligent employment, investigation, hiring, supervision, training, or retention of any person, the use of any force to protect persons or property whether or not the "bodily injury", was intended from the standpoint of the insured or committed by or at the direction of any insured, and the failure to render or secure medical treatment or care necessitated by an "assault" or "battery".

26. The HERNANDEZ ACTION Complaint alleges assault and battery, including but not limited to allegations that Dylan and the other pledges were repeatedly hit and paddled with hands and paddles as part of the "Big Brother, Little Brother Night" event, threatened, and forced to drink alcohol. Accordingly, the Hazing Exclusion applies to bar coverage for SD CHAPTER.

## FIRST CAUSE OF ACTION

**(Declaratory Relief Against All Defendants)**

27. Plaintiff hereby incorporates Paragraphs 1 through 26 as though fully set forth herein.

28. An actual controversy has arisen and now exists between Plaintiff ADMIRAL, on the one hand, and Defendants on the other hand, concerning their respective rights and obligations under the POLICY with respect to the HERNANDEZ ACTION.

29. Plaintiff contends that the SD CHAPTER does not qualify as an insured with respect to the HERNANDEZ ACTION; that accordingly Plaintiff has no obligation to defend or indemnify the SD CHAPTER under the POLICY; and that Plaintiff is entitled to reimbursement of all fees and costs paid on its behalf. On information and belief, Defendants dispute those contentions.

30. Plaintiff contends that the POLICY's Alcohol Exclusion, Hazing Exclusion, Assault and/or Battery exclusion apply to preclude coverage for the SD CHAPTER with respect to the HERNANDEZ ACTION; that accordingly Plaintiff

has no obligation to defend or indemnify it under the POLICY; and that Plaintiff is entitled to reimbursement of all fees and costs paid on its behalf. On information and belief, Defendants dispute those contentions.

31. Plaintiff seeks a judicial determination of its rights and obligations with regard to coverage for the HERNANDEZ ACTION, including but not limited to declarations that:

(a) The SD CHAPTER does not qualify as an insured under the POLICY with respect to the HERNANDEZ ACTION;

(b) Plaintiff has no obligation to defend the SD CHAPTER in the HERNANDEZ ACTION under the POLICY;

(c) Plaintiff has no obligation to indemnify the SD CHAPTER in the HERNANDEZ ACTION under the POLICY;

(d) Plaintiff is entitled to reimbursement of all fees and costs it paid on behalf of the SD CHAPTER with respect to the HERNANDEZ ACTION; and

(e) Plaintiff may withdraw from the defense of the SD CHAPTER in the HERNANDEZ ACTION.

## **SECOND CAUSE OF ACTION**
### **(Reimbursement Against the SD CHAPTER)**

32. Plaintiff hereby incorporates Paragraphs 1 through 42 as though fully set forth herein.

33. Plaintiff assumed the defense of the SD CHAPTER in the HERNANDEZ ACTION, subject to a reservation of rights. Under California law, the reservation of rights includes the right to recoup defense fees incurred on behalf of the SD CHAPTER to the extent that the HERNANDEZ ACTION is not covered under the terms of the POLICY.

34. To the extent that the Court declares that there is no coverage for the HERNANDEZ ACTION for the SD CHAPTER because it does not qualify as an

insured under the POLICY, Plaintiff is entitled to reimbursement of all attorneys' fees and costs incurred for the defense of the SD CHAPTER in the HERNANDEZ ACTION.

35. Because Plaintiff is entitled to those declarations, it is entitled to reimbursement in the amount which Plaintiff has already paid in defense fees and costs plus any additional amounts paid until this Court declares there is no coverage for the HERNANDEZ ACTION, plus pre-judgment interest on those amounts at the legal rate.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff ADMIRAL prays for judgment against Defendants as follows:

1. For a judicial declaration that the SD CHAPTER does not qualify as an insured under the POLICY with respect to the HERNANDEZ ACTION;

2. For a judicial declaration that Plaintiff has no obligation to defend the SD CHAPTER in the HERNANDEZ ACTION under the POLICY;

3. For a judicial declaration that Plaintiff has no obligation to indemnify the SD CHAPTER in the HERNANDEZ ACTION under the POLICY;

4. For a judicial declaration that Plaintiff is entitled to reimbursement of all fees and costs it paid on behalf of the SD CHAPTER with respect to the HERNANDEZ ACTION;

5. For a judicial declaration that Plaintiff may withdraw from the defense of the SD CHAPTER in the HERNANDEZ ACTION;

6. For reimbursement of all defense fees and costs incurred by Plaintiff for the defense of the SD CHAPTER in the HERNANDEZ ACTION, in an amount to be proven at trial, plus pre-judgment interest on those amounts;

7. For costs of suit; and

/ / /

/ / /

8. For such other and further relief that may be just.

DATED: August 16, 2022         MUSICK, PEELER & GARRETT LLP

By:  *s/David A. Tartaglio*
David A. Tartaglio
Chad A. Westfall
Attorneys for Plaintiff ADMIRAL INSURANCE COMPANY
Email: d.tartaglio@musickpeeler.com
Email: c.westfall@musickpeeler.com